**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO CCI INSURANCE COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA,<br><br>     Defendant. | NO. 6:13-CV-00995-DNH-ATB |

**DEFENDANT CENTURY INDEMNITY COMPANY'S
FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendant Century Indemnity Company ("Century"), by and through its undersigned counsel, hereby responds to Plaintiff Utica Mutual Insurance Company's ("Utica") Complaint.

## I. ANSWER

1. Denied as stated. Century admits only that Plaintiff purports to bring this action as described in Paragraph 1.

2. Admitted.

3. Century admits only that it is registered to do business in the state of New York. To the extent that the allegations in Paragraph 3 are conclusions of law, no response is required. To the extent that the allegations pertain to Utica, Century lacks knowledge and information sufficient to respond to those allegations, and they are accordingly denied.

4. To the extent that the allegations in Paragraph 4 are conclusions of law, no response is required. Century lacks knowledge and information to respond to the remaining allegations in Paragraph 4, and they are accordingly denied.

5. Admitted.

6. Century admits only that it has assumed the rights and liabilities of CCI and INA. To the extent that the allegations in Paragraph 6 purport to characterize any "reinsurance agreements," the documents speak for themselves and those allegations are accordingly denied.

7. Admitted.

8. The underlying policies are written documents that speak for themselves, and Plaintiff's characterization of the underlying policies is therefore denied.

9. To the extent that the allegations in Paragraph 9 purport to characterize the underlying policies, the documents speak for themselves, and those allegations are accordingly denied. To the extent that the allegations in Paragraph 9 pertain to actions taken by Utica, Century lacks knowledge and information to respond to those allegations, and they are accordingly denied.

10. To the extent that the allegations in Paragraph 10 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 10 purport to characterize the underlying insurance policies or any "reinsurance agreements," the documents speak for themselves, and those allegations are accordingly denied.

11. To the extent that the allegations in Paragraph 11 purport to characterize certain reinsurance certificates or related documents, the documents speak for themselves and

those allegations are accordingly denied. By way of further response, the exhibits to Plaintiff's Complaint do not contain the "1975 Certificate," which neither party has been able to locate.

12. Century lacks knowledge and information sufficient to respond to the allegations in Paragraph 12, and those allegations are accordingly denied.

13. To the extent that the allegations in Paragraph 13 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 13 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves, and those allegations are accordingly denied.

14. Century admits only that Plaintiff billed Century for amounts purportedly owed under the 1973 Certificate. To the extent that the allegations in Paragraph 14 purport to characterize the 1973 Certificate, the document speaks for itself and those allegations are accordingly denied.

15. Century admits only that Plaintiff billed Century for amounts purportedly owed under the alleged 1975 Certificate. To the extent that the allegations in Paragraph 15 purport to characterize the documents related to the 1975 Certificate, the documents speak for themselves and those allegations are accordingly denied. By way of further response, neither party has been able to locate a copy of the 1975 Certificate.

16. Century specifically admits that Utica has provided certain information regarding the liability claims, payments for loss, and bills. Century further specifically admits that it performed a claims review at Utica's office. The remaining allegations in Paragraph 16 are denied.

17. To the extent that the allegations in Paragraph 17 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 17 purport to characterize

the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 17 are denied. By way of further response, Utica has billed for costs not covered by the underlying policy and, thus, not reinsured by the 1973 Certificate.

18. Denied.

19. To the extent that the allegations in Paragraph 19 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 19 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. Century specifically denies that it breached any obligation to Plaintiff.

## COUNT I
### (Breach Of Contract)

20. Century incorporates by reference its responses above to Paragraphs 1 through 19 as if fully set forth herein.

21. To the extent that the allegations in Paragraph 21 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 21 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 21 are denied.

22. To the extent that the allegations in Paragraph 22 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 22 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 22 are denied.

23. To the extent that the allegations in Paragraph 23 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 23 purport to characterize

the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 23 are denied.

24. Paragraph 24 is a conclusion of law to which no response is required.

25. Paragraph 25 is a conclusion of law to which no response is required.

## COUNT II
### (Account Stated)

26. Century incorporates by reference its responses above to Paragraph 1 through 25 as if fully set forth herein.

27. To the extent that the allegations in Paragraph 27 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 27 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 27 are denied.

28. Denied.

29. To the extent that the allegations in Paragraph 29 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 29 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 29 are denied.

30. To the extent that the allegations in Paragraph 30 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 30 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 30 are denied.

# COUNT III
## (Violation Of Duty Of Utmost Good Faith And Fair Dealing)

31. Century incorporates by reference its responses above to Paragraphs 1 through 30 as if fully set forth herein.

32. To the extent that the allegations in Paragraph 32 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 32 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 32 are denied.

33. Paragraph 33 is a conclusion of law to which no response is required.

34. Century admits only that Utica provided certain information regarding the liability claims, payments for loss, and bills. The remaining allegations in Paragraph 34 are denied.

35. To the extent that the allegations in Paragraph 35 are conclusions of law, no response is required. To the extent that the allegations in Paragraph 35 purport to characterize the reinsurance certificates or related documents, the documents speak for themselves and those allegations are accordingly denied. The remaining allegations in Paragraph 35 are denied. By way of further response, Utica billed for costs not covered by the underlying policy and, thus, not reinsured by the 1973 Certificate.

36. Denied.

37. To the extent that the allegations in Paragraph 37 are conclusions of law, no response is required. By way of further response, Century specifically denies that it breached any obligation to Plaintiff. The remaining allegations in Paragraph 37 are denied.

38. The allegations in Paragraph 38 are conclusions of law to which no response is required. By way of further response, Century specifically denies that it breached any duty to Plaintiff.

39. The allegations in Paragraph 39 are conclusions of law to which no response is required. By way of further response, Century specifically denies that it breached any duty to Plaintiff.

## COUNT IV
### (Declaratory Judgment)

40. Century incorporates by reference its responses to Paragraphs 1 through 39 as if fully set forth herein.

41. To the extent that the allegations in Paragraph 41 are conclusions of law, no response is required. The remaining allegations are denied.

42. To the extent that the allegations in Paragraph 42 are conclusions of law, no response is required. The remaining allegations are denied.

43. The allegations in Paragraph 43 are conclusions of law to which no response is required.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver, estoppel, and/or unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the terms of the reinsurance agreements.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that Defendant has paid or has agreed to pay Plaintiff certain amounts billed under the 1973 Certificate.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to adequately demonstrate the existence of the 1975 Certificate or its terms.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's payment of costs not covered by the underlying policy and, thus, not reinsured by the 1973 Certificate.

## II. COUNTERCLAIMS

1. Utica has the burden to prove the existence, terms, and conditions of the reinsurance agreements that it alleges that Century issued to it in 1973 and 1975, and the contracts of insurance that they allegedly reinsure. To the extent that it fails to do so, it has failed to state a claim for which relief can be granted. In this regard, Century restates and incorporates by reference all its responses and defenses. In the alternative, to the extent Utica is able to establish the existence, terms, and conditions of the reinsurance agreements it alleges that Century issued to it in 1973 and 1975, and the contracts of insurance that they allegedly reinsured, Century alleges the following:

### THE PARTIES

2. Century Indemnity Company ("Century"), as Successor To CCI Insurance Company ("CCI"), as Successor to Insurance Company of North America ("INA"), is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

3. On information and belief, Utica Mutual Insurance Company ("Utica") was at all relevant times and still is a corporation organized and existing under the laws of the State of New York with its principal place of business at 180 Genesee Street, New Hartford, New York, where it is engaged in business as an insurance company.

### JURISDICTION AND VENUE

4. Century restates and incorporates by reference the responses and allegations contained in the foregoing paragraphs, as if fully set forth herein.

5. Subject to its defenses and denials, Century alleges that this Court has jurisdiction over these Counterclaims under 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

6. Goulds Pumps, now part of ITT Corporation, is a manufacturer of pumps that is alleged to have used asbestos in its packing and gaskets.

7. From 1955 to 1985, Utica issued to Goulds numerous primary and umbrella insurance policies.

8. Goulds alleged that the primary policies imposed a duty on Utica to defend and indemnify.

9. Goulds further contended that several of these primary policies had no aggregate limit or limit on defense costs.

10. Utica also placed with Goulds numerous umbrella policies, which provided for indemnity of Goulds in excess of the primary policies. The umbrella policies Utica issued to Goulds had per occurrence and aggregate limits of liability, which were inclusive of both loss and loss adjustment expenses (i.e. defense costs). Under the umbrella policies, Utica's obligation to pay Goulds could not exceed the limits of the policy.

11. Upon information and belief, Utica purchased reinsurance for certain of the umbrella policies it issued to Goulds, but its primary policies issued to Goulds were insured primarily by Utica.

12. On or about February 13, 2003, Goulds sued Utica for coverage in California state court, contending that under the primary policies Utica issued to Goulds there was no aggregate limit for asbestos claims, and Utica was obligated to pay defense costs indefinitely.

13. On or about October 31, 2003, Utica initiated a declaratory judgment action against Goulds in New York state court.

14. On or about February 20, 2007, Utica settled with Goulds by negotiating an agreement with an effective date of January 1, 2006 (the "Utica/Goulds Agreement").

15. The Utica/Goulds Agreement set forth the parties' agreement as to Utica's legal obligations to make payments to Goulds under each of its policies.

16. With respect to all of Utica's umbrella policies, Goulds and Utica expressly agreed that any "Payment of Defense Costs will erode Available Limits" of those policies, confirming that under the umbrella policies Utica issued to Goulds, the limits of liability will be exhausted by the payments of loss and defense.

17. The Utica/Goulds Agreement acknowledged that the Agreement did not alter Utica's payment obligations under the umbrella policies.

18. Under the Utica/Goulds Agreement, Utica and Goulds further stipulated that there were aggregate limits for bodily injury under the primary policies, and that Utica would deem all of the primary policies exhausted as to asbestos product-liability claims against Goulds.

19. In effect, the Utica/Goulds Agreement terminated Utica's obligations under its primary policies without requiring Utica to make payments under those policies, and shifted the financial obligations and burdens to the umbrella policies.

20. Utica, upon information and belief, communicated with Goulds about its reinsurance in a manner inconsistent with its obligation to act with the utmost good faith, including but not limited to seeking to introduce terms and findings into the settlement for the sole purpose of maximizing its reinsurance.

21. In its Complaint, Utica contends that Century reinsured a $5,000,000 layer of the umbrella policy that Utica issued to Goulds bearing policy number 2252 GLU, which was in effect from July 1, 1973 to July 1, 1974 (the "Umbrella Policy No. 2252 GLU").

22. In letters to reinsurers and insurance brokers, both before and after the 2006 Utica/Goulds Agreement, Utica represented that the umbrella policies from 1964 to 1976 were

written on an ultimate net loss basis such that loss and expense erode the limits—i.e. that Utica had no legal obligation to pay defense costs beyond the policy limit of Umbrella Policy No. 2252 GLU.

23. Under the Utica/Goulds Agreement, Utica and Goulds agreed that under the Umbrella Policy No. 2252 GLU, Utica had no legal obligation to pay defense costs beyond the policy limits.

24. The payments Utica made to Goulds, including the payments made under Umbrella Policy No. 2252 GLU, were made pursuant to the terms of the Utica/Goulds Agreement.

25. Utica maintains two sets of books for the payments it makes to Goulds: one in which it tracks how monies are paid out under individual umbrella policies based on Utica's actual legal and contractual obligations to Goulds, and another to bill reinsurers, including Century. The separate books that are maintained to bill reinsurers assign costs to individual umbrella policies that Utica is not legally obligated to pay Goulds.

26. By maintaining separate books—one for its legal obligations and another for its billings to reinsurers—Utica caused to be billed to reinsurers at least $10 million more under Umbrella Policy No. 2252 GLU than it was legally obligated to pay Goulds under the same umbrella policy.

27. Without the consent of Century, Utica entered upon a scheme to pass on to Century costs that Utica knew it was not legally obligated to pay to Goulds under Umbrella Policy No. 2252 GLU.

28. In furtherance of Utica's scheme, and as described more fully herein, Utica engaged in a course of willful and intentional misconduct, including, without limitation: (1)

12

knowingly billing Century for defense payments under Umbrella Policy No. 2252 GLU, which Utica was not legally obligated to make under Umbrella Policy No. 2252 GLU; (2) maintaining two sets of books, one that tracked Utica's legal obligations and the payments made in accord with those obligations under Umbrella Policy No. 2252 GLU, and another used to improperly bill Century for costs that Utica was not legally obligated to pay and did not pay under Umbrella Policy No. 2252 GLU; (3) providing incomplete and misleading information about the policies; (4) misleading Century concerning the contents of Umbrella Policy No. 2252 GLU; and (5) engaging in other bad-faith conduct.

29. Utica has further sought to facilitate its scheme by representing that it is entitled to reimbursement for defense costs outside of limits based on text that it either knew was not part of Umbrella Policy No. 2252 GLU or, if it was part of the policy, was added by Utica without disclosure to, or the consent of, Century long after any reinsurance was placed.

30. The misrepresentations made to Century concerning the nature and characterization of Utica's payments under Umbrella Policy No. 2252 GLU were material. The materiality of the misrepresentations is reflected, in part, by the difference in the amount that Utica recorded in its books and records as actually attributable to Umbrella Policy No. 2252 GLU versus the inflated amount that it recorded in a separate set of books and records for purposes of generating bills to be issued to Century.

31. Utica knew, at all relevant times, that the alternative books and records that it created to generate bills for Century included amounts that it was not legally obligated to pay Goulds under Umbrella Policy No. 2252 GLU.

32. Utica's billings to Century were inconsistent with Utica's legal obligations and pre-settlement positions, and constituted an unreasonable and bad faith effort to artificially

13

inflate the amount of collectible reinsurance.

33. Utica created the alternative books and records that it used to generate bills for Century with the intent to induce reliance.

34. Century relied upon the billings it was provided and the representations that were made to it.

35. In reliance on Utica's affirmative representations as to its obligations under Umbrella Policy No. 2252 GLU, Century was induced to pay millions of dollars to Utica towards the $5,000,000 limit of the 1973 Certificate.

36. By these and the other acts, including those described above, Utica engaged in conduct that is so entirely contrary to the terms and conditions of reinsurance as to constitute a manifest deviation from the whole concept of reinsurance and an utter repudiation of the parties' bargain.

37. As a direct and proximate result of Utica's willful, material and objectively unreasonable conduct and failure to honor the terms and conditions of the agreement, Century has been grossly prejudiced and has suffered special and unique injury.

38. Accordingly, Century is entitled to compensatory damages in an amount to be determined at trial.

## COUNT I
### (Breach of Contract)

39. Century repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

40. An essential and vital aspect of any reinsurance agreement is that the cedent act in utmost good faith and abides by the terms and conditions of its agreement.

41. Century paid Utica millions of dollars towards the $5,000,000, under the 1973

Reinsurance Certificate for indemnity. Subject to the denials and defenses stated above, Century contends that it has fulfilled its obligations and completed performance under the terms of the 1973 reinsurance agreement with Utica.

42. Commencing on or before June 7, 2013, and without the consent of Century, Utica entered upon a scheme to pass on to Century costs that Utica was not legally obligated to pay and knew that Century was not legally obligated to pay.

43. In furtherance of this scheme, and as described more fully above, Utica engaged in a course of willful and intentional misconduct, including, without limitation: (1) knowingly issuing billings to Century for defense payments that Century was not obligated to make; (2) maintaining two sets of books, one that tracked Utica's legal obligations and payments made under Umbrella Policy No. 2252 GLU, and another used to bill Century for costs that Utica was not legally obligated to pay and did not pay under Umbrella Policy No. 2252 GLU; (3) refusing to provide information about the policies; (4) misleading Century concerning the contents of the 1973 policy; and (5) engaging in other bad-faith conduct.

44. By these acts, Utica engaged in conduct that is so entirely contrary to the terms and conditions of reinsurance as to constitute a manifest deviation from the whole concept of reinsurance and an utter repudiation of the parties' bargain.

45. Utica's billings to Century were also inconsistent with Utica's legal obligations.

46. As a direct and proximate result of Utica's willful and material misconduct and failure to honor the terms and conditions of the agreement, Century has been grossly prejudiced and has suffered special and unique injury.

47. Accordingly, Century is entitled to judgment against Utica for breach of contract, and Utica is liable for all resulting damages, including attorneys' fees and interest.

## COUNT II
### (Breach Of The Duty Of Good Faith And Fair Dealing)

48. Century repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

49. Utica owes Century a duty of utmost good faith and fair dealing.

50. Utica's billings and allocations to Century were not in good faith, and were objectively unreasonable.

51. As a direct and proximate result of Utica's willful and intentional misconduct, Century has been grossly prejudiced and has suffered special and unique injury.

52. Accordingly, Century is entitled to a declaration that Utica breached its obligations to Century through its willful and intentional misconduct, and as a result of Utica's utter repudiation of the parties' bargain and conduct in manifest deviation from the whole concept of insurance, Utica has forfeited its right to coverage.

53. As a direct and proximate cause of Utica's misconduct, Century has sustained and continues to sustain damages, including incurring attorneys' fees and other costs in connection with this lawsuit, which resulted from Utica's breach of its duty of utmost good faith and fair dealing.

54. By reason of the foregoing, Century is entitled to judgment against Utica for the breach of its duty of utmost good faith and fair dealing, and Utica is liable for all resulting damages, including attorneys' fees and interest.

## COUNT III
### (Declaratory Judgment)

55. Century repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

56. Utica cannot recover reinsurance for *ex gratia* payments—those that Utica has no legal obligation to make and did not make under Umbrella Policy 2252 GLU.

57. The terms of the Utica/Goulds Agreement state that Utica has no legal obligation to pay defense costs outside the limits on Umbrella Policy 2252 GLU. Moreover, Utica represented, both before and after the 2006 Utica/Goulds Agreement, that the umbrella policies from 1964 to 1976 were written on an ultimate net loss basis such that loss and expense erode the limits—i.e. that Utica had no legal obligation to pay defense costs beyond the policy limit of Umbrella Policy No. 2252 GLU.

58. On information and belief Century has paid the limit on the 1973 Reinsurance Certificate such that any and all outstanding and future billings issued by Utica to Century are for defense costs outside of limits.

59. Utica continues to bill Century for payment of defense costs beyond the limit of the Umbrella Policy 2252 GLU.

60. Utica's billings to Century are unreasonable and not in good faith.

61. By reason of the foregoing, Century is entitled to a judgment declaring that Century is not obligated to pay Utica's outstanding and future billings, and that any payments that Utica has billed to Century for defenses costs outside limits are voluntary, *ex gratia* payments, which Century has no obligation to reinsure.

### **REQUEST FOR RELIEF**

WHEREFORE, Century Indemnity Company requests that the Court:

1. Dismiss Utica Mutual Insurance Company's Complaint with prejudice;

2. Enter a judgment declaring that Century has no obligation to pay outstanding and future billings by Utica;

3. Enter an order that Utica pay Century for all compensatory damages incurred by Century, in an amount to be determined at trial;

4. Enter a judgment declaring that any payments made pursuant to the Utica/Goulds Agreement are *ex gratia* and non-recoverable because they do not constitute covered claims under the terms of the 1973 Reinsurance Certificate;

5. For costs and disbursements of this action, including their attorneys' fees and whatever further relief the Court deems necessary, just or appropriate; and

6. For other ancillary and declaratory relief as the Court deems just and proper.

Dated: New York, New York
March 24, 2015

Respectfully Submitted,

O'MELVENY & MYERS LLP

By: /s/ Tancred V. Schiavoni
Tancred V. Schiavoni
Vincent S. Weisband
Times Square Tower
7 Times Square
New York, New York 10036-6524
Ph: (212) 326-2000
Fx: (212) 326-2061

*Counsel for Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on March 24, 2015. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: March 24, 2015	By:	s/ Tancred V. Schiavoni
Tancred V. Schiavoni

*Attorney for Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*